# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING

**JEFFERY W. RINER,**

        **Plaintiff,**

**v.**                                        **Civil Action No.: 5:09-CV-125**
                                                    **JUDGE STAMP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10], AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

## I.      INTRODUCTION

On November 18, 2009, Plaintiff Jeffery W. Riner ("Plaintiff"), by counsel Michael Miskowiec, Esq., filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On January 27, 2010, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On March 1, 2010 and March 30, 2010, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [10] [12]. Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND AND REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

### A.    Procedural Background

On September 20, 2006, Plaintiff applied for disability insurance benefits, alleging disability as of March 30, 2004. Tr. at 94 & 105. On October 31, 2008, the United States Administrative Law Judge ("ALJ") held a hearing, and Plaintiff testified under oath. Tr. at 28-51. *See* 20 C.F.R. § 404.929 (hearing before an administrative law judge). On February 26, 2009, the ALJ issued an unfavorable decision to Plaintiff, finding him not entitled to a period of disability. Tr. at 17-27. On August 28, 2009, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Tr. at 3-6. *See* 20 C.F.R. § 404.967 (Appeals Council review--general); *see also* 20 C.F.R. § 404.981 (Effect of Appeals Council's decision or denial of review). Plaintiff now requests judicial review of the ALJ decision denying his application for disability.

### B.    Standard for Judicial Review of a Decision by the Administrative Law Judge in a Disability Case

> Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v.*

> *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). In applying these legal standards, the Court reviews the decision by the ALJ.

## C.    Standard for Disability and Five-Step Evaluation Process

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One:    Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two:      Determine whether the plaintiff has a severe impairment;

Step Three:    Determine whether the plaintiff has a "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:     Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five:     Consider residual functional capacity assessment, age, education, and work experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and

coming to a decision, the ALJ makes findings of fact and conclusions of law. This Court will review

the decision by the ALJ to determine whether it is supported by substantial evidence, in accordance

with 42 U.S.C. § 405(g) and *Hays*.

### D.     Review of ALJ Application of Five-Step Evaluation Process and Whether it is Supported by Substantial Evidence

#### 1.     Step One: Determine whether the Plaintiff is Engaging in Substantial Gainful Activity

At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled...

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is

realized....

If you are working or have worked as an employee...[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity...

[I]f you are self-employed [w]e will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity...

If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled *regardless of your medical condition* or your age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1572; *see also* 20 C.F.R. § 404.1574(a) (evaluation guide for employees who are not self-employed); *see also* 20 C.F.R. § 404.1575(a)(2) (evaluation guide if you are self-employed); *see also* 20 C.F.R. § 404.1520(b) (emphasis added). Plaintiff's alleges that he became disabled on March 30, 2004. Tr. at 94 & 105. After his alleged date of disability, Plaintiff worked in 2006 and earned $2,200. Tr. at 22. The ALJ classified this as an unsuccessful work attempt. Tr. at 22. Therefore, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. Tr. at 22.

### 2. Step Two: Determine whether the Plaintiff has a Severe Impairment

At the second step, we consider the medical severity of your impairment(s)...[A] severe impairment...[is] any impairment or combination of impairments which **significantly limits your physical or mental ability to do basic work activities**...We will not consider your age, education, and work experience...

Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months...

An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. **Basic work activities...mean[s] the abilities and**

> **aptitudes necessary to do most jobs. Examples of these include--1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.**

*See* 20 C.F.R. § 404.1520; *see also* 20 C.F.R. § 404.1509; *see also* 20 C.F.R. § 404.1521; *see also*

*Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666 (4th Cir. 1989). The ALJ found

Plaintiff to have the following severe impairments: diabetes mellitus, pancreatitis, and hypertension.

Tr. at 22.

### a. Review of the Record and Plaintiff's Testimony at the ALJ Hearing in Evaluating whether Plaintiff has a Significant Limitation on his Ability to Perform Basic Work Activities to Meet the Criteria for a Severe Mental Impairment

Plaintiff contends that the ALJ improperly focused on selected portions of the record and

erred by finding that Plaintiff does not have a severe mental impairment. Pl. Doc. 11 at 10-13. After

a review of the record and Plaintiff's testimony at the ALJ Hearing, the ALJ found that Plaintiff does

not have a significant limitation on his ability to perform basic work activities to meet the criteria

for a severe mental impairment. Tr. at 22-26. This Court will review the record and the ALJ's

decision to determine whether the decision is supported by substantial evidence.

On February 11, 2004, Plaintiff had a checkup with his primary care physician, Courtney

Struthers, M.D. Tr. at 280-81. Plaintiff requested a refill for 40 mg of Paxil that had been prescribed

by a psychiatrist. Tr. at 280. Plaintiff reported that he does not feel he needs to return to the

psychiatrist as things have been fairly stable for sometime. Tr. at 280.

On March 22, 2004, Plaintiff fractured his right thumb at work. Tr. at 207 & 217.

On May 12, 2004, Plaintiff had an office visit with Dr. Struthers and completed a depression

check mark type questionnaire. Tr. at 379. The questionnaire contained several boxes labeled with a value of 0 to 3 points per box. Tr. at 379. The boxes totaled 16 for Plaintiff's depression score. Tr. at 379.

On June 20, 2004, Plaintiff was admitted to City Hospital in Martinsburg, West Virginia for recurrent acute pancreatitis with epigastric pain. Tr. at 202. Plaintiff was treated with intravenous pain medication and prescribed Percocet upon discharge. Tr. at 202.

On July 7, 2004, Plaintiff had a followup appointment with Dr. Struthers following his June hospitalization for chronic pancreatitis. Tr. at 279. Plaintiff reported that he is having trouble affording his medications. Tr. at 279. He tried to take himself off Paxil but he experienced increased dizziness so he resumed the medication. Tr. at 279.

On July 20, 2005, Plaintiff had an office visit with Dr. Struthers and completed another depression check mark type questionnaire. Tr. at 388. The boxes totaled 20 for Plaintiff's depression score. Tr. at 388. Dr. Struthers commented that this was suggestive of worsening depression. Tr. at 389. Plaintiff declined a referral to a counselor and stated that he does not believe in hurting himself. Tr. at 389.

On November 7, 2005, Plaintiff had an appointment with Dr. Struthers to discuss stopping the Paxil medication. Tr. at 277. Plaintiff said that Paxil is not working very well because he has no emotions. Tr. at 277. Plaintiff said he feels his depression relates more to his medical issues and he is willing to consider another medication if his symptoms return after he stops the Paxil. Tr. at 277. Plaintiff said "he was 'an emotional wreck.' One time when he tried to cold turkey." [sic grammar]. Tr. at 277. Plaintiff is currently taking 40 mg of Paxil. Tr. at 277. Dr. Struthers advised Plaintiff to taper off the medication from 20 mg for several weeks; then 10 mg; and then 5 mg. Tr. at 277.

On November 21, 2005, Plaintiff was admitted to City Hospital for complaints of abdominal pain, nausea, and vomiting. Tr. at 175. The physician diagnosed Plaintiff with an acute flare-up of chronic pancreatitis. Tr. at 175. Plaintiff reported that he had been laid off from work. Tr. at 175.

On December 8, 2005, Plaintiff had a follow-up with Dr. Struthers for chronic pancreatitis. Tr. at 276. Plaintiff was scheduled to have a persistent large pancreatic pseudocyst drained in January. Tr. at 276. Plaintiff said he needs at least four Lortab per day for his pain. Tr. at 276. Plaintiff rated his pain as 4 out of 10. Tr. at 276. Plaintiff is currently on 20 mg of Paxil. Tr. at 276. Plaintiff reported that he is in the middle of the happy versus sad category but he is unwilling to see a counselor at this time. Tr. at 276.

On January 5, 2006, Plaintiff had a pulmonary angiogram cat scan for symptoms of left side pleuritic chest pain. Tr. at 209. The reviewing physician found that Plaintiff has inflammatory changes along the tail of the pancreas, which is consistent with changes of pancreatitis. Tr. at 209. The reviewing physician recommended a cat scan of the abdomen if symptoms persist. Tr. at 209.

On May 19, 2006, Plaintiff had an office visit with Dr. Struthers. Tr. at 271-72. Plaintiff reported taking six Lorcet a day during flare-ups. Tr. at 271. Plaintiff said the pain is debilitating and depressing. Tr. at 271. Plaintiff may reconsider an antidepressant but went off Paxil last winter. Tr. at 271.

On July 14, 2006, Plaintiff had an office visit with Dr. Struthers for follow-up on health maintenance, depression, and diabetes. Tr. at 429. Plaintiff had gained 15 pounds over the last 2 months and weighed 177.7 pounds. Tr. at 429. Plaintiff reported gaining weight since starting insulin. Tr. at 429. Plaintiff said he is "[f]eeling much better!" Tr. at 429. Plaintiff had significant improvement in pain on methadone rather than hydrocodone. Tr. at 429.

On September 20, 2006, Plaintiff applied for disability insurance benefits, alleging disability as of March 30, 2004 due to a ruptured ulcer on his pancreas, hypertension, diabetes, alertness, major depression, emotional seizures, and a sleeping disorder. Tr. at 109 & 138.

On October 3, 2006, Plaintiff completed a disability report and said that he has a "hard time going anywhere. I am in pain all [the] time. I take a narcotic. I don't like going to many places especially by myself because of pain and cramps and I might need a bathroom at an inconvenient time. I can't do any lifting. I can't handle heat or sunlight. I fall asleep a lot." Tr. at 109.

On October 28, 2006, Plaintiff completed a function report. Tr. at 123-32. Plaintiff said his daily activities include waking his daughter up for school, taking her to the bus stop, testing his sugar level, taking medication, doing some dishes, doing maybe one or two loads of laundry, driving his wife to work, picking his daughter up at the bus stop after school, picking his wife up from work, making a meal for the family if he feels well enough, watching TV, and socializing with the family before going to bed. Tr. at 123. Plaintiff said that he takes care of the children by helping them get something to eat, helping with homework, and helping with laundry. Tr. at 126. He also takes care of some cats. Tr. at 126. Plaintiff said he falls asleep throughout the day like he was "drugged." Tr. at 126. Plaintiff makes soup and sandwiches and no more than three course meals. Tr. at 127. He prepares at least one meal a day. Tr. at 127. Plaintiff does the household chores of dishes, laundry, light cleaning, watering flowers, and putting chemicals in the pool. Tr. at 127. He tries to do household work every day. Tr. at 127. Plaintiff leaves the house several times a day to drive to the doctor's office or go shopping. Tr. at 128. Plaintiff shops for groceries, medicine, and household needs at least two times a week for one to three hours. Tr. at 128. He is able to pay bills, count change, and use a checkbook. Tr. at 128. Plaintiff's hobbies include bowling and fishing, but he does

not often have the opportunity to do these activities. Tr. at 129. He socializes weekly at church and talks to friends and family on the telephone. Tr. at 129. Plaintiff reported he can lift 20 pounds; squatting hurts his legs; he can bend depending on abdominal pain and cramps; standing hurts his legs and feet after a long period; he can walk up to one-half mile; climbing stairs is tiring; kneeling hurts his knees; and his memory and concentration are affected by certain medications. Tr. at 130. He can follow written instructions real well and can follow spoken instructions pretty well. Tr. at 130. Plaintiff gets along well with authority figures and has never been fired for problems with getting along with other people. Tr. at 131. He is able to handle stress, changes in his routine, and he does not have any unusual behavior or fears. Tr. at 131.

On February 23, 2007, Plaintiff completed a disability report. Tr. at 137-44. Plaintiff stated that due to medications he cannot stay alert, and that he falls asleep and has bouts of intestinal spasms one to three times a day. Tr. at 138. Plaintiff said he has new physical and mental limitations of alertness, major depression, emotional seizures, and a sleeping disorder. Tr. at 138. Plaintiff reported that he was not taking any medications for depression. Tr. at 141.

On February 28, 2007, Plaintiff had an office visit with Dr. Struthers. Tr. at 432. Plaintiff reported having a lot of intestinal spasm lasting about 45 minutes and rated as 10 out of 10 on a pain scale. Tr. at 432. Plaintiff has had these symptoms for "years," but this is different from the pancreatitis pain. Tr. at 432. The spasms have increased over the last few years. Tr. at 432. Plaintiff last worked as a forklift driver in March 2004. Tr. at 432. Plaintiff felt that he is unable to work or hold a job due to daily pain and medications, which affect concentration, level of consciousness, and endurance. Tr. at 432. Dr. Struthers noted that Plaintiff gained 17 pounds over 7 months and currently weighs 194.5 pounds since getting his glucose under control. Tr. at 432. His depression

is level. Tr. at 432. Plaintiff does not want to go back on medication at this point. Tr. at 432. Plaintiff is not depressed, irritable, has no suicidal ideation, and has mood swings. Tr. at 433.

On May 31, 2007, Dr. Struthers wrote a letter stating that Plaintiff has chronic pancreatitis with severe pseudocyst formation, chronic severe abdominal pain, diabetes, severe combined hyperlipidemia, and depression. Tr. at 323. Dr. Struthers opined that Plaintiff should be considered permanently and totally disabled. Tr. at 323.

On October 31, 2008, at the ALJ hearing, Plaintiff testified that he worked as a lift truck driver at Variform until they terminated him in March 2004. Tr. at 35. Plaintiff reported that he collected 4 to 5 weeks of worker's compensation and 13 weeks of unemployment benefits. Tr. at 35. Plaintiff said that while drawing unemployment, he had to certify that he was physically and mentally able to work. Tr. at 36. Plaintiff testified that he drives every day; can lift 20 pounds without being too uncomfortable; can stand for 30 to 45 minutes; can sit for about an hour and a half; and can walk for 30 to 45 minutes with some ease. Tr. at 35 & 38-39. Plaintiff estimated his pain level as 3 to 4 out of 10. Tr. at 37. Plaintiff stated that his pain feels like someone shoving a knife in his abdomen and twisting. Tr. at 45-46. Plaintiff stated that he has problems concentrating, and he has problems with his short-term and long-term memory due to his medications. Tr. at 44. Plaintiff said he stopped taking depression and anxiety medications because he could not afford them. Tr. at 42. Plaintiff testified that he experiences periods of week long depression on a monthly basis. Tr. at 49.

**b.     ALJ Conclusion after a Review of the Record and Plaintiff's Testimony as to whether Plaintiff has a Significant Limitation on his Ability to Perform Basic Work Activities to Meet the Criteria for a Severe Mental Impairment**

After a review of the record and Plaintiff's testimony, the ALJ found that Plaintiff does not

have a significant limitation on his ability to perform basic work activities to meet the criteria for

a severe mental impairment. Tr. at 22-26. The ALJ found as follows:

> The evidence supports a finding that the claimant's psychologically based symptoms cause no restrictions in acitivites of daily living. The claimant is totally independent in all activities of daily living and engages in a variety of activities. He has no difficulties in maintaining social function. Mr. Riner has family and friends with whom he socializes. He is able to interact appropriately with the public while shopping, running errands, attending church, and bowling. The claimant's mild deficiencies of concentration and attention are caused by a combination of pain and medication side effects and possibly by some psychologically based symptoms. He is able to follow instructions, follow television and movie plots, balance a checkbook, use a computer, and travel independently. There is no evidence that the claimant has ever experienced any episodes of decompensation in work or work-like settings of an extended duration...The undersigned finds that the claimant's...depression [is] "not severe."

Tr. at 23. Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Struthers based on the

ALJ's own lay opinion. Pl. Doc. 11 at 12.

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527. Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, "the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178

(4th Cir. 2001).

*Johnson v. Barnhart*, 434 F.3d 650, 654 & n.5 (4th Cir. 2005). The ALJ found that medical opinions of treating physicians are entitled to appropriate consideration if they are well-supported and consistent with other evidence. Tr. at 25-26. The ALJ found that the opinion of Dr. Struthers is inconsistent with other substantial evidence including Dr. Struthers' own treatment notes and Plaintiff's activities of daily living. Tr. at 26. Therefore, the ALJ afforded minimal weight to the opinion of Dr. Struthers.

Plaintiff states that as of May 2006, he had lost 60 pounds since he left work in March 2004. Pl. Doc. 11 at 5-6. However, Dr. Struthers noted that Plaintiff's weight had stabilized since he started taking insulin. Tr. at 429 & 432. On July 14, 2006, Plaintiff had an office visit with Dr. Struthers, and she noted that Plaintiff had gained 15 pounds over the last 2 months and weighed 177.7 pounds. Tr. at 429. Plaintiff reported gaining weight since starting insulin. Tr. at 429. Plaintiff said he is "[f]eeling much better!" Tr. at 429. Plaintiff had significant improvement in pain on methadone rather than hydrocodone. Tr. at 429. On February 28, 2007, Plaintiff had an office visit with Dr. Struthers, and she noted that Plaintiff gained 17 pounds over 7 months and currently weighs 194.5 pounds since getting his glucose under control. Tr. at 432.

Plaintiff contends that the ALJ should have ordered a psychological consultative examination. Pl. Doc. 11 at 12. The Code of Federal Regulations outlines when Social Security will purchase a consultative examination:

> A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
> (1) The additional evidence needed is not contained in the records of

> your medical sources;
> (2) The evidence that may have been available from your treating or
> other medical sources cannot be obtained for reasons beyond your
> control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is
> not available from your treating or other medical sources;
> (4) A conflict, inconsistency, ambiguity or insufficiency in the
> evidence must be resolved, and we are unable to do so by
> recontacting your medical source; or
> (5) There is an indication of a change in your condition that is likely
> to affect your ability to work, but the current severity of your
> impairment is not established.

20 C.F.R. § 404.1519a(b). There is no evidence that any of the situations enumerated under §
404.1519a(b) applied in Plaintiff's case. The record contained sufficient evidence describing
Plaintiff's alleged impairments for the ALJ to make a decision.

"[A] severe impairment...[is] any impairment or combination of impairments which
significantly limits your physical or mental ability to do basic work activities...it must have lasted
or must be expected to last for a continuous period of at least 12 months." *See* 20 C.F.R. § 404.1520;
*see also* 20 C.F.R. § 404.1509. Substantial evidence supports the ALJ's conclusion that Plaintiff
does not have a significant limitation on his ability to perform basic work activities to meet the
criteria for a severe mental impairment.

### 3. Step Three: Determine whether the Plaintiff has a "Listed" Impairment

> At the third step, we also consider the medical severity of your
> impairment(s). If you have an impairment(s) that meets or equals one
> of our listings in appendix 1 of this subpart and meets the duration
> requirement, we will find that you are disabled. *See* 20 C.F.R. §
> 404.1520(a).

> The Listing of Impairments...describes...impairments that we
> consider to be severe enough to prevent an individual from doing any
> gainful activity, regardless of his or her age, education, or work
> experience. *See* 20 C.F.R. § 404.1525(a).

Most of the listed impairments are permanent or expected to result in death. *See* 20 C.F.R. § 404.1525(a).

We need evidence from acceptable medical sources (e.g. licensed physicians) to establish whether you have a medically determinable impairment(s). *See* 20 C.F.R. § 404.1513(a).

To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies ***all of the criteria*** in the listing. *See* 20 C.F.R. § 404.1513(a) (emphasis added).

***An impairment that manifests only some of those criteria, no matter how severely, does not qualify***. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885 (1990) (emphasis added).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing impairment. Tr. at 23.

## * Residual Functional Capacity Assessment *
## (Needs to be Determined Before Proceeding to Step Four)

If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record...We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work...and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work...

Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record....

Residual functional capacity is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). According to the Social Security Administration, residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means

> 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Regulation (SSR) 96-8p. Residual functional capacity is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1529(a).

*See* 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 404.1545(a); *see also Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform unskilled sedentary work. Tr. at 23.

> *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met...

*See* 20 C.F.R. § 404.1567 (italics added). Plaintiff contends that the ALJ should have considered the combined effects of his pain medication, depression, diabetes, chronic pancreatitis, and hypertension in his residual functional capacity. Pl. Doc. 11 at 11-13. The ALJ reviewed the record and found as follows:

> In sum, the above residual functional capacity assessment is supported by the claimant's activities of daily living and objective medical evidence. The claimant has had very sporadic medical treatment since the alleged onset date. He did not quit working due to any impairment but because he was laid off work. He looked for work until his unemployment insurance ran out in approximately July 2004. During the time that he was accepting unemployment benefits, the claimant certified to one governmental agency that he was able and willing to work. He now states to another governmental agency that he was not able to work during that period. This also tends to reflect poorly on the claimant's overall credibility. While the claimant's impairments are severe in that they have more than a

> minimal affect on his ability to function, they are not totally disabling
> and do not preclude the performance of all substantial gainful
> activity.

Tr. at 26. Substantial evidence supports the ALJ's residual functional capacity assessment that

Plaintiff can perform sedentary work.

### 4. Step Four: Compare Residual Functional Capacity Assessment to Determine whether the Plaintiff Can Perform Past Relevant Work

> At the fourth step, we consider our assessment of your residual
> functional capacity and your past relevant work.
> 20 C.F.R. § 404.1520(a).

> Past relevant work is work that you have done within the past 15
> years, that was substantial gainful activity, and that lasted long
> enough for you to learn to do it.
> 20 C.F.R. § 404.1560(b).

> Your impairment(s) must prevent you from doing your past relevant
> work. If we cannot make a determination or decision at the first three
> steps of the sequential evaluation process, we will compare our
> residual functional capacity assessment...with the physical and mental
> demands of your past relevant work. (See § 404.1560(b).) If you can
> still do this kind of work, we will find that you are not disabled.
> *See* 20 C.F.R. § 404.1520(f).

The ALJ found that Plaintiff is unable to perform his past relevant work because it required

heavy exertion and he is currently limited to sedentary exertion. Tr. at 26. The parties do not dispute

the ALJ's findings in Step Four.

### 5. Step Five: Consider Residual Functional Capacity Assessment, Age, Education, and Work Experience to Determine if the Plaintiff Can Perform Any Other Work

> At the fifth and last step...

> [i]f we find that your residual functional capacity is not enough to
> enable you to do any of your past relevant work, we will use the same
> residual functional capacity assessment we used to decide if you
> could do your past relevant work when we decide if you can adjust
> to any other work. We will look at your ability to adjust to other work

> by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1560(c). At the final step of the disability analysis, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity assessment to determine whether Plaintiff could perform any other work. The ALJ noted that Plaintiff was 43 years old during the period at issue, which makes him a younger individual as defined in the Social Security Act. Tr. at 26. *See* 20 C.F.R. § 404.1563 (age as a vocational factor). The ALJ found that Plaintiff has a high school education and transferability of job skills is not material to the determination of disability. Tr. at 26. *See* 20 C.F.R. § 404.1564 (education as a vocational factor); *see also* 20 C.F.R. § 416.968(d) (transferability of job skills).

Plaintiff contends that the ALJ's finding that Plaintiff could only perform unskilled work was a nonexertional limitation and necessitated the use of vocational expert testimony. Pl. Doc. 11 at 9-10.

> We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

*Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). The ALJ found that Plaintiff's only nonexertional limitation is that he is limited to unskilled work, and there is no affect on the unskilled sedentary occupational base. Tr. at 27.

Plaintiff contends that the ALJ should have called a vocational expert to question whether absenteeism and deficits in concentration caused by intermittent flare-ups would have reduced the

sedentary unskilled occupational base. Pl. Doc. 11 at 10. The ALJ made findings regarding

Plaintiff's credibility:

> The claimant's mild deficiencies of concentration and attention are caused by a combination of pain and medication side effects and possibly some psychologically based symptoms...The claimant's testimony was evaluated...and found not entirely credible regarding the severity of his symptoms and their affect on his ability to perform work related activities. Written documentation submitted by the claimant for the record reflects a greater level of activity than...the claimant's testimony. In written documents Mr. Riner reported that in addition to taking his daughter to and...from the bus stop, he also does dishes, laundry, pool maintenance, waters the garden, does light cleaning, shops, cooks, handles finances including balancing the checkbook, uses a computer, bowls, goes fishing, attends church, takes care of the family cats, and picks his wife up from work daily. The claimant's testimony appears to have minimized his activities of daily living. The inconsistencies between the written records and the claimant's testimony tend to reflect poorly on the claimant's overall credibility...[I]n February 2007, the claimant reported that he had no depression.

Tr. at 23-25. Since Plaintiff's only nonexertional limitation was unskilled work, which does not rise

to the level of a nonexertional impairment, vocational expert testimony was not necessary.

After considering the Plaintiff's age, education, work experience, residual functional capacity

assessment, and vocational expert testimony, the ALJ found that there are jobs that exist in the

national economy that the Plaintiff could perform. Tr. at 27. Substantial evidence supports the ALJ's

decision that Plaintiff can perform work in the national economy.

> Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 529. **Ultimately, it is the duty of the administrative law judge reviewing a case, and *not* the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.** *King*, 599 F.2d at 599. "This Court

does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist*, 538 F.2d at 1056-57; "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock*, 483 F.2d at 775. **"The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"**

*See Hays*, 907 F.2d at 1456 (emphasis added). Therefore, this reviewing Court will uphold the ALJ's decision that Plaintiff can perform sedentary work because it is supported by substantial evidence.

In conclusion, the ALJ found that based on Plaintiff's application filed on September 20, 2006, Plaintiff is not entitled to a period of disability or disability insurance benefits. Tr. at 27. The Court finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform work in the national economy.

## III.       RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[12]**, **DENY** Plaintiff's Motion for Summary Judgment **[10]**, and **AFFIRM** the Decision of the Administrative Law Judge. The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Report and Recommendation. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court

based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 9, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE